UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Christopher Mansoori,<br><br>    *Plaintiff*,<br><br>v.<br><br>Jovante Thomas,<br><br>    *Defendant*. | No. 22 CV 1634<br><br>Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Christopher Mansoori sued Jovante Thomas[1] and a "John Doe" defendant under 42 U.S.C. § 1983 alleging he was subjected to unconditional conditions of confinement at Cook County Jail through several incidents involving vermin in his cell. Because Mansoori was incarcerated when he filed suit, he needed to comply with the Prison Litigation Reform Act ("PLRA"), which demands prisoners exhaust their administrative remedies prior to suing in federal court. 42 U.S.C. § 1997e(a). Thomas[2] has moved for summary judgment arguing Mansoori did not abide by this requirement by failing to name Thomas in the various grievances Mansoori filed. The Court disagrees and denies the motion.

LOCAL RULE 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

Any party, including a pro se litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 Fed. Appx. 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though employee was pro se litigant"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even pro se litigants must follow procedural rules"); *Parker*

---

[1] Originally named as "JT Support Services Superintendent" in the complaint.
[2] The "John Doe" defendant remains unidentified (and unserved), and the pending motion is not brought on behalf of that individual.

*v. Fern*, 2024 WL 1116092, at *2 (N.D. Ill. Mar. 14, 2024) ("It is well-settled that a plaintiff's pro se status does not excuse him from complying with federal and local procedural rules.").

Here, Thomas filed a Rule 56.1 statement, and as required by Rule 56.2, served Mansoori with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." [Dkts. 41, 43.] This latter filing explains what a motion for summary judgment is, and what steps Mansoori needed to take to respond to the motion. Notwithstanding these instructions, Mansoori failed to respond to Thomas's statement of material facts. Nor did he file any additional facts. L.R. 56.1(b)(3). Consequently, the Court takes all its facts from Thomas and deems them admitted to the extent they are supported by evidence in the record. L.R. 56.1(e)(3); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

### BACKGROUND

Mansoori entered the custody of the Cook County Department of Corrections (CCDOC) on October 7, 2019. [Dkt. 41 at 2.][3] Between April 5, 2020, and January 16, 2022, Mansoori submitted six grievances. The parties agree Mansoori timely filed and appealed each grievance, as is required to exhaust administrative remedies under CCDOC's Inmate Grievance Procedure ("IGP").[4] [*Id.* at 4-5; Dkt. 41-5 at 29-41.]

All of Mansoori's grievances relate to mice, rats, and cockroaches entering his cell. [*Id.* at 2-3; Dkt. 41-5 at 29-41.] In the body of each grievance form, Mansoori describes what occurred, and then argued CCDOC needed to take action to resolve the underlying problem. For example, on April 10, 2021, Mansoori filed the following grievance:

> There is an infestation of mice on this deck, there are approximately 7 mice aggressively running through the deck. In the night they run into my cell and on a few occasions I have woken up to the mice in my property bag eating my food open! I kicked the bag until the mouse (a large one) jumped out. Rodent infestations are against standards allowed for inmates by Federal rulings. I've been under these conditions for the month I've been on this deck. This grievance is to report the last 15 days, no staff has taken any steps to combat the infestation.

Dkt. 41-5 at 32. CCDOC responded to this grievance by stating the "PCC has been notified of 'rodents' in Division 6, 1-H on 4/15/2021." [*Id.* at 33.] In his appeal of this

---

[3] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[4] The IGP requires inmates to file a grievance within 15 days of an incident, and to appeal an adverse decision within 15 days. [Dkt. 41 at 3.]

grievance, Mansoori noted that jail staff had done nothing to combat the problem, and that he has had to kill the rodents himself. [*Id.* at 34.]

Jovante Thomas's name does not appear on any of the grievance forms. Although the CCDOC grievance forms require the inmate to list the "Name and/or Identities of Accused", Mansoori's grievances list either "Tom Dart" (the Cook County Sheriff); "Unknown Staff"; "John Doe Staff"; or "Jail Staff." [Dkt. 41-5 at 29-41.] Nevertheless, CCDOC personnel always substantively responded to Mansoori's grievances; not once did they inform Mansoori his grievances were impermissibly vague, or needed to identify the specific CCDOC employee(s) responsible for vermin control. Instead, CCDOC advised Mansoori the jail was investigating the problem.

In response to Mansoori's January 16, 2022, grievance, a "J.T." informed Mansoori that PCC was notified there were mice where Mansoori was being housed, and would continue to check the facility for mice. [*Id.* at 41.] The response included an addendum, signed by "J.T. Support Services" admonishing Mansoori to keep his living space clean to avoid vermin, and that the jail had cleaning supplies he could use. [*Id.* at 42.] Mansoori then filed this lawsuit against "JT Support Services Superintendent" based on a failure to rectify the vermin infestation. [Dkt. 1.] Through the service waiver process, counsel for Thomas identified him as the "J.T." [Dkt. 11.]

Thomas now moves for summary judgment arguing Mansoori failed to exhaust his administrative remedies. [Dkt. 42.] While conceding Mansoori complied with IGP's timeliness requirements, Thomas argues that the grievances Mansoori filed are procedurally defective because they did not identify him as the responsible individual for the alleged violations:

> Plaintiff never submitted a grievance naming Jovante Thomas, JT, the Superintendent of Support Services, or Support Services in the narrative section of the form or the accused persons section of the grievance form. In fact, Plaintiff never submitted *any* grievance complaining of *any* specific actions [or] conduct relating to Defendant Jovante Thomas. Simply put, Defendant was not the target of the grievance submitted by Plaintiff and thus, Plaintiff did not abide by the CCDOC grievance process.

[Dkt. 42 at 8] (emphases in original). Mansoori opposes the motion, primarily on the grounds that he did not know Thomas was responsible for handling rodent issues until he responded to Mansoori's final grievance, and that his grievances put CCDOC on notice of the issue. [Dkt. 56.]

3

ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

The PLRA requires inmates to exhaust their administrative remedies before initiating a federal civil rights lawsuit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) ("a suit filed before the prisoner has exhausted these remedies must be dismissed") (cleaned up). Accordingly, if a correctional facility has an internal administrative grievance system through which an inmate can seek to correct a problem, the inmate must utilize that system before filing a claim in federal court. *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

To properly submit a grievance under the IGP, inmates "are required to provide the specific date, location and time of the incident, [and] problem or event that you are grieving." [Dkt. 41-8 at 32.] Thomas argues Mansoori failed to adhere to this requirement—and therefore did not exhaust his administrative remedies—because he did not include Thomas's name on any of the grievances. [Dkt. 42 at 7.] The Court disagrees.

Each of the grievances Mansoori filed in this action relate to the CCDOC's inability to keep vermin out of Mansoori's cell. In each grievance, Mansoori described the event, discussed the pervasive nature of the infestation, and demanded jail personnel intervene to address the problem. None of the grievances list any specific CCDOC personnel responsible for the incident, which is understandable considering the grievance related to the presence of animals in the jail; not staff misconduct.

CCDOC implicitly acknowledged this in responding to Mansoori's grievances on the merits by stating it would address the problem. [*See* Dkt. 41-5.] Not once did CCDOC fault Mansoori for failing to abide by the IGP's requirement to explain the event in question. Nor did they claim he needed to direct his grievance to a particular department; presumably this was clear from the content of the grievance. Whoever

4

at the jail was responsible for vermin control would need to be alerted, and the responses from CCDOC indicated that person had been alerted.

The fact that the CCDOC substantively responded to the grievances is sufficient to deny their motion. The Seventh Circuit has made clear that where "prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) (explaining that a procedural shortcoming in a grievance "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming."); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (same); *see also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")

Likewise, CCDOC cannot seriously suggest that it did not understand the nature of Mansoori's grievances because he did not name Thomas. That argument has been foreclosed for more than a decade. *Maddox*, 655 F.3d 709 at 722 ("That Maddox didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement.") Indeed, CCDOC itself ultimately identified Thomas as the correct person to respond to Mansoori based on the content of his grievances.

The nature of Mansoori's complaint—the facility was infested with vermin—distinguishes this case from those on which Thomas relies. In *King*, for example, King, an inmate, suffered burns when another inmate threw coffee at him. *King v. Dart*, 63 F.4th 602, 604 (7th Cir. 2023). King alerted Officer Szul to his injury and claimed he needed medical attention, but Officer Szul ignored him. *Id*. Despite King's knowledge of Szul's role in his delayed medical treatment, King did not name Officer Szul in his grievance. *Id*. When King then attempted to sue Officer Szul, the Seventh Circuit affirmed dismissal on exhaustion grounds because King's grievance did not "point to Szul or any other correctional officer being liable for King's injuries." *Id*. at 608. Consequently, the jail was not on notice of Szul's actions, and did not have an opportunity to address the allegations prior to suit. *Id*.

Mansoori's grievances have little in common with King's. Here, Mansoori is not grieving any specific, discrete action by jail staff. He is complaining about a pervasive condition that CCDOC needs to address. Plausibly, Mansoori argues he was unaware of who that person and/or department was at the time he submitted the grievances. [Dkt. 56 at 2.] Unlike the jail in *King*, by complaining about the presence of vermin in his cell, CCDOC knew the grievance was aimed at whatever department was responsible for vermin control. Put simply, the need to name specific jail staff in a

grievance is context specific, and here Mansoori's grievances adequately put CCDOC on notice.

## Conclusion

For the reasons stated herein, Thomas's motion for summary judgment on exhaustion is denied.

Enter: 22 CV 1634
Date: June 24, 2024

_____
Lindsay C. Jenkins
United States District Judge